UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA,<br><br>Plaintiff,<br><br>v.<br><br>SARAH R. DOYLE; HOLLAND E. T. HINES AND KATHLEEN D. KEENAN,<br><br>Defendants.<br><br>SARAH R. DOYLE and HOLLAND E.T. HINES,<br><br>Counter-claimants,<br><br>v.<br><br>NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA<br><br>Counter-Defendant. | No. 2:21-cv-00481-TLN-CKD<br><br>**ORDER** |

This matter is before the Court on Defendants and Counter-claimants Sarah R. Doyle and Holland E.T. Hines's (collectively, "Counter-claimants") Motion for Summary Judgment. (ECF No. 53.) Plaintiff and Counter-defendant National Union Fire Insurance company of Pittsburgh, PA ("National Union") filed an opposition and countermotion for summary judgment. (ECF No.

1

54.) Counter-claimants filed a reply and an opposition. (ECF No. 55.) For the reasons set forth below, Counter-claimants' motion is DENIED, and National Union's motion is GRANTED.

## I. FACTUAL AND PROCEDURAL BACKGROUND[1]

The instant action arises from a dispute regarding John Doyle's (the "decedent") life insurance policy. (ECF No. 1 at 3.) The decedent was a Dell/EMC employee and a participant in the EMC Welfare Benefit Plan. (ECF No. 54-1 at 3.) Under the EMC Welfare Benefit Plan, the decedent elected to be covered under Dell/EMC's Accidental Death and Dismemberment ("AD&D") coverage. (*Id.*) National Union issued a Group Accident Insurance Policy to Dell/EMC which included the AD&D coverage the decedent selected. (*Id.* at 3–4.)

In March 2015, the decedent created a will that left his estate to the Doyle family trust. (ECF No. 55-1 at 2.) The decedent provided that upon the death of both him and his spouse, the remaining balance of the trust would be distributed to his son, Damion N. Doyle ("Damion"). (*Id.*) In addition, the decedent's family trust included a specific provision disinheriting Counter-claimants. (*Id.*; ECF No. 54-1 at 4.)

On July 5, 2016, the decedent and his spouse were killed, and Damion was accused of their murder. (ECF No. 55-1 at 2.) Barbara Hull, the decedent's estate administrator, first informed National Union about a claim under the decedent's AD&D coverage in August 2018. (*Id.*) Counter-claimants and Damion responded in writing that they wished to make a claim for the insurance benefits from the decedent's AD&D coverage in August and September 2020, respectively. (*Id.* at 3.) On March 16, 2021, National Union filed an interpleader complaint, naming Counter-claimants and Damion as defendants.[2] (ECF No. 1.) Counter-claimants filed an answer and counterclaim against National Union seeking interest on the decedent's policy proceeds. (ECF No. 29; ECF No. 30.)

---

[1] The following facts are undisputed unless otherwise stated.

[2] National Union's interpleader complaint also named Barbara Hull, the American Red Cross of San Bernadino ("American Red Cross"), the Gethsemane Temple Church of God in Christ ("Gethsemane Temple"), and Kathleen Keenan as defendants. (ECF No. 1.) These Defendants, along with Damion, were dismissed from this action on March 7, 2025. (ECF No. 58.)

2

1    On August 9, 2022, shortly after this action was reassigned to the undersigned, the Court stayed this action pending the conclusion of a criminal action against Damion in state court. (ECF Nos. 24, 25.)  On December 15, 2022, Damion was convicted and sentenced to prison for the murder of the decedent and the decedent's spouse. (ECF No. 55-1 at 3.)  On August 11, 2023, the Court lifted the stay in the instant action. (ECF No. 34.)

On November 14, 2023, National Union filed a motion to deposit $522,000 with the Court, which the Court granted and authorized on November 15, 2023. (ECF Nos. 39, 41.)  The following year, Counter-claimants and the remaining Defendants executed a settlement agreement ("Agreement") to resolve the question of how to distribute the interpleader funds. (ECF No. 46 at 4–15.)  Defendants American Red Cross and Gethsemane Temple then moved for approval of the Agreement and disbursement of the interpleader funds. (*Id.*)  National Union filed a response requesting the Court also discharge it from the action concurrent with its approval of the Agreement, because its role had "been fulfilled[.]"  (ECF No. 49 at 1.)  On October 9, 2024, the Court approved the Agreement and ordered the funds dispersed accordingly as well as any interest that had accrued from the time the funds had been deposited. (ECF No. 52.)  However, because the Agreement stipulated that Counter-claimants "have the right to pursue the claim for interest owed," (ECF No. 46 at 5), and the Counter-claimants were actively seeking additional interest on Decedent's life insurance policy proceeds, the Court denied National Union's request to be discharged. (ECF No. 52 at 2–3.)

Counter-Claimants filed the instant motion for summary judgment on October 15, 2024. (ECF No. 53.)  National Union filed its opposition and countermotion on October 29, 2024.[3] (ECF No. 54.)

///

---

[3]    Counter-claimants argue National Union's countermotion should be denied and stricken as untimely. (ECF No. 55 at 7.)  On August 18, 2023, the Court issued an Amended Pretrial Scheduling Order. (ECF No. 35.)  That order stated that discovery closed on April 18, 2024, and "parties shall file dispositive motions no later than one hundred eighty (180) days after the close of discovery." (*Id.* at 2, 4.)  The last day to file dispositive motions was October 15, 2024.  (*See id.*)  National Union filed its opposition and countermotion on October 29, 2024 — after the deadline.  However, the Court in its discretion, considers National Union's countermotion.

3

## II.     STANDARD OF LAW

Summary judgment is appropriate when the moving party demonstrates no genuine issue of any material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file together with affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). Indeed, summary judgment should be entered against a party who does not make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, *i.e.*, a fact that might affect the outcome of the suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and that the dispute is genuine, *i.e.*, the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 251–52.

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

4

trial." *First Nat'l Bank of Ariz.*, 391 U.S. at 288–89. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (quoting Rule 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with any applicable affidavits. Fed. R. Civ. P. 56(c); *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1305–06 (9th Cir. 1982). The evidence of the opposing party is to be believed and all reasonable inferences that may be drawn from the facts pleaded before the court must be drawn in favor of the opposing party. *Anderson*, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987). Finally, to demonstrate a genuine issue that necessitates a jury trial, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.* at 587.

### III.  ANALYSIS

The parties' arguments can be distilled into raising the following issues: (1) whether the Employee Retirement Income Security Act ("ERISA") preempts California Insurance Code § 10111.2 ("§ 10111.2"); and (2) whether Counter-claimants are entitled to interest as an equitable remedy. (ECF Nos 53, 54.) The Court will address each issue in turn after considering evidentiary objections and requests for judicial notice.

#### A. Evidentiary Objections

National Union objects to much of the declaration submitted by Daniel Glass's ("Glass") — Counter-claimants' attorney — in support of Counter-claimants' motion for summary judgment. (ECF No. 54-22 at 2–4.) National Union's objections fall into the following two categories: (1) lack of foundation; and (2) relevance. The Court examines National Union's

1  objections under each of these two categories in turn.  The Court limits its analysis to evidence it
2  relies upon in this order.  *See Bean v. Costco Wholesale Corp.*, 561 F. Supp. 3d 915, 922 (E.D.
3  Cal. 2021) (noting the Court need not rule on all the objections raised).  The objections the Court
4  does not rely upon are DENIED as moot.

*i.  Lack of Foundation Objections*

6  A witness may only testify to a matter "if evidence is introduced sufficient to support a
7  finding that the witness has personal knowledge of the matter."  Fed. R. Evid. 602.  However,
8  "the requirement of personal knowledge imposes only a 'minimal' burden on a witness; if
9  'reasonable persons could differ as to whether the witness had an adequate opportunity to
10 observe, the witness's testimony is admissible.'"  *Strong v. Valdez Fine Foods*, 724 F.3d 1042,
11 1045 (9th Cir. 2013) (internal citation omitted).  Furthermore, the personal knowledge bar at
12 summary judgment "is particularly low because all 'justifiable inferences' must be drawn in favor
13 of the nonmoving party."  *Id.* (quoting *Anderson*, 477 U.S. at 255).

14 The Court overrules National Union's objection to paragraph 3 and Exhibit B — the
15 Agreement.  (*Id*. at 3.)  The Court finds Glass has provided the necessary foundation to admit
16 Exhibit B, which is referenced in paragraph 3 of his declaration.  (ECF No. 53-1 at 2.)  Glass has
17 demonstrated familiarity with Exhibit B by stating it was "fully executed by all of the named
18 parties and submitted to the Court," showing sufficient knowledge as the attorney of record
19 involved in its execution and filing.  (*Id*. at 2.)  Moreover, the Court notes this Agreement is
20 already on file with the Court.  (ECF No. 46 at 4–15.)  For these reasons, the Court overrules
21 National Union's objection to paragraph 3 and Exhibit B.  (ECF No. 54-22 at 3.)

22 The Court also overrules National Union's objections to paragraph 6 and Exhibit E.  (ECF
23 No. 54-22 at 4–5.)  Exhibit E is a copy of Post Judgment Interest Rates for federal courts in 2023.
24 (*Id.*)  The Court finds Glass has provided the necessary foundation for Exhibit E referenced in
25 paragraph 6.  (*Id.*)  Glass has included a URL of the website he sought to admit into evidence,
26 described the source, and indicated the source's reliability by stating the site is "owned and
27 operated by the United States Bankruptcy Court for the Southern District of California."  (ECF
28 No. 53-1 at 3.)  For these reasons, the Court finds Glass has laid sufficient foundation for how he

6

came across the material and why it is reliable.

In sum, the Court OVERRULES National Union's objections to parts of paragraphs 3 and 6, along with Exhibits B and E on the grounds that Glass lacks foundation under Federal Rule of Evidence 602.

### ii. Relevance Objections

National Union also objects to the relevance of paragraphs 3 and 6, along with Exhibits B and E. (ECF No. 54-22 at 2–7.) Under Federal Rule of Evidence 401, relevance depends on whether the evidence "has any tendency to make a fact more or less probable than it would be without the evidence." Fed. R. Evid. 401. The standard for relevance is a very low bar that is easily met. *United States v. Miranda–Uriarte*, 649 F.2d 1345, 1353 (9th Cir. 1981); *Rios v. Tilton*, No. 2:07-cv-0790 KJN P, 2016 WL 29567, at *5 (E.D. Cal. Jan. 4, 2016.) Here, the Court finds that each piece of evidence National Union objects to on relevance grounds has some tendency to make a material fact more or less probable and is therefore relevant. As such, the Court OVERRULES National Union's objections on grounds of relevance.

### B. Judicial Notice

National Union also requests the Court take judicial notice of Exhibits 5, 8, 9, 10, 11, 12, 13, 14, 15, and 16. (ECF No. 54-21.) A Court may judicially notice a fact that is not subject to reasonable dispute because it: 1) is generally known within the trial court's territorial jurisdiction; or 2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b). Courts may also take judicial notice of court filings and other matters of public record. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006).

The Court takes judicial notice of National Union's cited exhibits. As to Exhibits 5 and 15, which are documents regarding the criminal indictment and conviction of Damion, the Court finds these documents to be matters of public record. *See Reyn's Pasta Bella, LLC*, 442 F.3d at 746 n.6. As to Exhibits 8, 9, 10, 11, 12, 13, and 14, which were submitted by the parties to this case's docket, the Court takes judicial notice of these documents as court filings. *See id.* As to Exhibit 16, which is a copy of the weekly post-judgment interest rate obtained from the United

1 States Bankruptcy Court of the Southern District of California's website, the Court takes judicial
2 notice of this information because it "can be accurately and readily determined from sources
3 whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).
4 Accordingly, the Court GRANTS National Union's request for judicial notice as to all
5 cited exhibits.

### C. Whether ERISA Preempts § 10111.2

ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan[.]" 29 U.S.C. § 1144(a). Nevertheless, ERISA has a savings clause that "saves" from preemption "any law of any State which regulates insurance[.]" 29 U.S.C. § 1144(b)(2)(A). In *Kentucky Ass'n. of Health Plans v. Miller*, the Supreme Court held that a state law is deemed to "regulate[] insurance" under § 1144(b)(2)(A), if the state law satisfies a two-part test. 583 U.S. 329, 342 (2003). "First, the state law must be specifically directed toward entities engaged in insurance." *Id.* Second, the state law must "substantially affect the risk pooling arrangement between the insurer and the insured." *Id.* However, ERISA's saving clause does not apply if a state-law cause of action "duplicates, supplements, or supplants the ERISA civil enforcement remedy." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004). The ERISA civil enforcement remedies are enumerated in 29 U.S.C. § 1132(a) — also known as ERISA § 502. *See Cleghorn v. Blue Shield of Cal.*, 408 F.3d 1222, 1225 (9th Cir. 2005).

Counter-claimants maintain that under ERISA's saving clause, § 10111.2 is saved from preemption because it regulates insurance. (ECF No. 53 at 10–15 (citing *Kentucky Ass'n. of Health Plans v. Miller*, 583 U.S. 329 (2003)); ECF No. 55 at 5.) Under § 10111.2, Counter-claimants argue they are entitled to a pre-judgment interest payment because they contend National Union impermissibly delayed depositing the AD&D benefit with the Court. (ECF No. 53 at 16–17.) To support this, Counter-claimants argue § 10111.2 is similar to § 10110.6, which the Ninth Circuit previously held is not preempted by ERISA. (*Id.* at 15–16 (citing *Orzechowski v. Boeing Co. Non-Union Long-Term Disability Plan*, 856 F.3d 686 (9th Cir. 2017).) In opposition, National Union argues no caselaw supports Counter-claimants position and maintains this Court should follow other California district courts in finding that ERISA preempts §

8

10111.2. (ECF No. 54 at 10–11 (citing *Gardner v. Bear Creek Corp.*, No. C 06-02822 MHP, 2007 WL 2318969, at *20 (N.D. Cal. Aug. 6, 2007).)

Section 10111.2 provides for pre-judgment interest payments, something ERISA does not provide as an enumerated remedy. *Compare* 29 U.S.C. § 1132(a), *with* § 10111.2(c); *see also Prado v. Allied Domecq Spirits and Wine Group Disability Income Policy*, 800 F.Supp.2d 1077, 1100 (2011) (determining that a mandatory interest rate imposed under § 10111.2 would improperly expand the scope of ERISA damages); *Gardner v. Bear Creek Corp.*, No. C 06-02822 MHP, 2007 WL 2318969, at *20 (N.D. Cal. Aug. 6, 2007) (denying a mandatory pre-judgment interest rate under § 10111.2). Therefore, even if § 10111.2 qualified under *Miller* as a state law which regulated insurance, because § 10111.2 provides an avenue to attain a remedy not provided for in ERISA's remedial scheme, it is preempted. *Cleghorn*, 408 F.3d at 1227 n.6 (quoting *Aetna Health Inc.*, 542 U.S. at 217–18). Counter-claimants citation to *Orzechowski*, the Ninth Circuit decision which found § 10110.6(a) was not preempted by ERISA, is unavailing. (ECF No. 53 at 15–16.) Unlike § 10111.2, § 10110.6(a) voids discretionary clauses in insurance contacts and does not provide a remedy not enumerated under ERISA. *Compare* § 10110.6(a), *with* § 10111.2(c). As such, in *Orzechowski*, unlike here, any analysis as to whether the state law "duplicate[d], supplement[ed], or supplant[ed]" the ERISA civil enforcement remedy was not discussed because it was not relevant. *See generally* 856 F.3d 686; *see also Aetna Health Inc.*, 542 U.S. at 209.

In sum, the Court finds § 10111.2 is preempted because it provides a remedy that is not enumerated under ERISA's civil enforcement remedial scheme. Therefore, application of the *Miller* factors under ERISA's savings clause are inapplicable. *See Turnispeed*, 2010 WL 140384, at *3 ("Where a state law is preempted under [ERISA] [§] 502(a), the savings clause will not save the law from preemption.").

D. <u>Whether Counter-Claimants are Entitled to Interest as an Equitable Remedy</u>

In the alternative, Counter-claimants request the Court award an alternative "equitable remedy" under ERISA. (ECF No. 53 at 17–18.) Counter-claimants argue it was inexcusable for National Union to take almost five years from the date of the decedent's death to file this

9

1    interpleader action and an additional year and a half to deposit Decedent's policy proceeds with
2    the Court. (*Id.* at 18–19.) According to Counter-claimants, the delay allowed National Union to
3    make a profit. (*Id.* at 18.) For that reason, Counter-claimants argue the Court should exercise its
4    discretion and award Counter-claimants interest at the federal post-judgment interest rate of
5    5.35%, which was the interest rate at the time National Union deposited the funds with the Court.
6    (*Id.* at 18; ECF No. 53-3 at 49.) Counter-claimants argue this interest rate should be applied for a
7    period of 87 months — from the time of the decedent's death to the time when National Union
8    deposited the decedent's policy proceeds with the Court. (ECF No. 53 at 18.) In total, Counter-
9    claimants seek $202,470.75. (*Id.*)

10   In opposition, National Union argues it investigated the claim to the decedent's policy in a
11   timely manner. (ECF No. 54 at 7–8.) According to National Union, this investigation was
12   complicated due to the decedent's severance from his employment at EMC and the merger of
13   EMC with Dell. (*Id.* at 7; ECF No. 54-3 ¶ 5.) National Union also argues Counter-claimants
14   were not beneficiaries of the decedent's policy and were not entitled to the decedent's benefits
15   until the Court approved the Agreement in October 2024. (*Id.* at 9, 11.) Coupled with
16   uncertainty surrounding Damion's criminal investigation and the Court's subsequent stay of
17   National Union's interpleader action, National Union contends its conduct was reasonable and
18   fair, especially since it deposited Decedent's funds with the Court after the stay was lifted. (*Id.* at
19   11–12.) Given this, National Union argues no interest is owed to Counter-claimants at all. (*Id.* at
20   12.) In the alternative, if any interest is owed, National Union argues the federal interest rate
21   should be 4.19%, which was the rate at the time the Agreement was signed. (*Id.*; ECF No. 54-20
22   at 2.) Further, National Union contends if any interest is awarded, it should only be owed for 63
23   days — from the time the stay was lifted to the time when the funds were deposited with the
24   Court.[4] (ECF No. 54 at 12.)

25   A district court may grant pre-judgment interest on an award of ERISA benefits at its

---

[4] As will be discussed, the Court concludes Counter-claimants are not entitled to pre-judgment interest. Therefore, the Court need not and does not resolve arguments regarding the appropriate interest rate.

1    discretion. *Luu v. First Unum Life Ins. Co.*, No. SACV1800970JVSJDEX, 2020 WL 8515206, at
2    *4 (C.D. Cal. Nov. 18, 2020) (internal citations omitted).  The decision to award pre-judgment
3    interest is a "question of fairness, lying within the court's sound discretion, to be answered by
4    balancing the equities." *Landwher v. DuPree*, 72 F.3d 726, 739 (9th Cir. 1995) (internal citation
5    omitted) (affirming district court decision to deny prejudgment interest).  Courts consider various
6    factors when determining whether interest should be awarded, including "the presence or absence
7    of bad faith or ill will." *Id.* (internal quotation and citation omitted).

8        Based on the record and after balancing the equities, the Court declines to award Counter-
9    claimants further interest.  First, while Counter-claimants argue National Union inexcusably
10   delayed filing an interpleader action, National Union presents evidence explaining the reasons for
11   the lengthy investigation.  (ECF No. 53 at 18; ECF No. 54.)  The evidence presented does not
12   show National Union acted with bad faith or ill will.  National Union's authorized adjusting
13   company, AIG Claims, first received notice of a claim under the decedent's policy on August 6,
14   2018.  (ECF No. 54-3 ¶ 4.)  An AIG claims adjuster responded two days later.  (*Id.* ¶ 5.)  This
15   initiated an investigation to determine the appropriate award and beneficiary, which involved
16   regular contact with the decedent's Estate Administrator and the Estate Administrator's attorney.
17   (*Id.*)  In a declaration submitted in support of National Union's opposition, an AIG Claims
18   Manager stated it took until June 2020 to confirm the decedent's employment status and salary —
19   relevant to the final AD&D benefit award — and in early 2021 the investigation showed
20   California's slayer statute could preclude Damion from receiving the AD&D benefits if he was
21   convicted.  (*Id.* ¶¶ 6, 11.)  National Union then proceeded to file this interpleader action on March
22   16, 2021.  (ECF No. 1; ECF No. 55-1 at 2.)  Considering the complexity and uncertainty
23   surrounding the total sum and entitlement to the AD&D benefit, Counter-claimants fail to
24   persuade the Court they are entitled to interest on the proceeds from the time of the decedent's
25   death until the interpleader action was filed.  *Cf. Nichols v. Unum Life Ins. Co. of Am.*, 287 F.
26   Supp. 2d 1088, 1094 (N.D. Cal. 2003) (finding the time it took the insurance company to conduct
27   its original investigation reasonable, but that it subsequently delayed filing an interpleader
28   action); *Villasenor v. Cmty. Child Care Council of Santa Clara Cnty., Inc.*, No. 18-CV-06628-

1    BLF, 2021 WL 242924, at *4 (N.D. Cal. Jan. 25, 2021) (awarding pre-judgment interest where
2    Defendant delayed authorization of Plaintiff's claim for benefits for over two years without any
3    written authorization and only approved the claim after Plaintiff filed suit); *Stone v. Bayer Corp.*
4    *Long Term Disability Plan*, No. 08-CV-356-BR, 2010 WL 2595675, at *4 (D. Or. June 21, 2010)
5    (granting Plaintiff's request for pre-judgment interest where Defendant denied Plaintiff's benefits
6    for five years and Plaintiff was required to file two federal court actions to obtain her benefits).

7    Second, Counter-claimants also argue it was inexcusable for National Union to delay
8    depositing the funds with the Court after the instant action was filed.  (ECF No. 53 at 18.)
9    However, Counter-claimants provide no authority requiring National Union to deposit the funds
10   at the same time as the filing of the statutory interpleader action.  Moreover, the case was stayed
11   from August 9, 2022, until August 11, 2023.  (ECF Nos. 25, 34); *see also Securities and*
12   *Exchange Comm'n v, Christian Stanley, Inc.*, No. CV 11-7147 GHK (MANx), 2012 WL
13   13009158, at *5 (C.D. Cal. Sept. 6, 2012) (citing *Wessel v. Buhler*, 437 F.2d 279, 284 (9th Cir.
14   1971)) (noting a Court could take into account the fact a case had been stayed when determining
15   whether to award prejudgment interest).  As National Union notes, because Counter-claimants
16   had been explicitly disinherited, Counter-claimants only became entitled to a portion of the
17   AD&D benefit on October 9, 2024, when this Court approved the Agreement.  (ECF No. 52; ECF
18   No. 54 at 12.)  At that time, the funds had already been deposited for eleven months with the
19   Court.  (ECF No. 41); *see also Nichols*, 287 F. Supp. 2d at 1088 (noting "it is well accepted that
20   the interpleading party bears no liability for interest on the interpleaded fund after the date that he
21   pays the interpleaded fund into the court.").  Any interest that accrued during those eleven months
22   — has already been distributed in part to each Counter-claimant.  (*See* ECF No. 52 at 4 (awarding
23   each of the Counter-claimants 40.4% of the accumulated interest).)

24   Without more, the Court finds Counter-claimants are not entitled to additional pre-
25   judgment interest.  *See Landwehr v. Dupree*, 72 F.3d 726, 739 (9th Cir. 1995) (affirming district
26   court's decision to deny pre-judgment interest because "there was no evidence of bad faith").
27   //
28   //

## VI. CONCLUSION

For the foregoing reasons, Counter-claimants' motion is DENIED and National Union's motion is GRANTED. (ECF Nos. 53, 54.) Given this order resolves all pending issues in this interpleader action, the Clerk of Court is directed to CLOSE this case.

IT IS SO ORDERED.

Date: June 24, 2025

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE